## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

JOSE DELEON,

    Plaintiff,

v.   Case No.  5:19-cv-64-TKW/MJF

KENNETH RAPPAPORT, *et al.*,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Jose Deleon, a Florida prisoner proceeding *pro se* and *in forma pauperis*, has filed an amended civil rights complaint under 42 U.S.C. § 1983. (Doc. 20). The undersigned recommends that Plaintiff's section 1983 claims be dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim upon which relief may be granted.[1]

### I.   Background

The relevant facts are taken from Plaintiff's amended complaint and all well-pleaded factual allegations of the amended complaint are taken as true. Plaintiff is an inmate of the Florida Department of Corrections ("FDC"). He commenced this suit

---

[1] The court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

alleging violations of the Eighth Amendment right to be free from cruel and unusual punishments. (Doc. 20 at 11). Plaintiff named three Defendants: Dr. Kenneth Rappaport, M.D.; Arenela, LPN; and Dr. John Doe, M.D. (*Id.* at 2).

On March 6, 2016, Plaintiff submitted a sick call request complaining of loss of vision in his right eye. (*Id.* at 5). The next day, Nurse Zimmerman examined Plaintiff's eye and advised Plaintiff to return if the symptoms worsened or if Plaintiff developed any new symptoms. On March 12, 2016, Plaintiff declared a medical emergency and was scheduled to be seen by a doctor. (*Id.*). On March 16, 2016, Plaintiff was seen by Dr. J. Bayolo and "was recommended optometry consult, eye patch, and skull x-ray." (*Id.*). On March 29, 2016, Dr. John Tugwell evaluated Plaintiff and recommended that Plaintiff be examined further. (*Id.* at 6).

On April 15, 2016, Plaintiff was taken to First Coast Retina Center and was evaluated by a retinal specialist and scheduled for surgery.[2] On April 21, 2016, Defendant Dr. Rappaport performed surgery on Plaintiff. Following surgery, Plaintiff was placed in observation for a 23-hour period. He was required to remain in a face-down position overnight, "due to the silicone oil tamponade, per Defendant Rappaport's orders." (*Id.*).

On April 22, 2016, Plaintiff was discharged from Memorial Hospital in Jacksonville, Florida and taken to the Florida Medical Reception Center ("RMC").

---

[2] Plaintiff does not specify which retinal specialist examined him on April 15, 2016.

(*Id.*). When Plaintiff arrived at RMC, he "was taken upstairs for 23-hour observation per report to nurse." (*Id.*). On June 28, 2016, at a follow-up visit with Dr. Rappaport, Dr. Rappaport determined that Plaintiff's retina was beginning to detach again and scheduled a second surgery. In July 2016, Dr. Rappaport performed a second surgery on Plaintiff. After surgery, Plaintiff was placed under a 23-hour observation period at the hospital.

On July 22, 2016, Plaintiff returned to RMC where he was evaluated in urgent care by Defendant Arenela at 9:30 PM. (*Id.* at 7). Thereafter, Dr. John Doe examined and "cleared" Plaintiff to be placed in a holding cell referred to as "the patio." At 10:00 PM, two officers came to the holding cell to "count" Plaintiff and another inmate. At that time, Plaintiff complained to the officers that he had just had surgery and he was having eye pain. The officer responded that "medical" knew where he was. (*Id.*). Plaintiff stayed the night in the patio.[3] Plaintiff complains that while he was in the holding cell, he was not provided post-operative medications and was not placed under 23-hour observation.

At breakfast the next morning, July 23, 2016, Plaintiff complained to an officer that he was enduring post-operative pain in his eye. (*Id.* at 7-8). The officer responded that he should "ask somebody in medical." (*Id.* at 8). Plaintiff does not state whether

---

[3] Plaintiff states that "[d]uring the rest of the night, Plaintiff would try to tell the officers that his eye was throbbing and [he] was experiencing a lot of pain to no avail." (Doc. 20 at 7). None of these individuals are defendants in this action.

he complied with the officer's directive to notify medical. That day, "after shift change" Plaintiff was taken to urgent care regarding his eye pain. At urgent care, Plaintiff complained to Nurse Jane Doe that he was in the patio for over 12 hours and needed some medication for his eye pain.[4] (*Id.*). Plaintiff further complained that he had not been given his "prescribed post-operative medications" during the night. (*Id.*). Nurse Jane Doe instructed Plaintiff to go to the patio and wait for the "keep on person" medical pick up. (*Id.*). At 7:30 PM, someone moved Plaintiff to a dormitory. Plaintiff alleges that he "later learned that the post-operative medications was [sic] sent with him when he was transferred from the Hospital to RMC" and that he "was still forced to endure the throbbing and pain in his eye because Plaintiff had none of the post-operative medications prescribed by Defendant Rappaport." (*Id.*). On July 27, 2016, Plaintiff was given his post-operative medications.

On September 27, 2016, Plaintiff had an appointment with Dr. Rappaport. Dr. Rappaport informed Plaintiff that he was required to undergo a third eye surgery to remove the cataract lens and replace it with an artificial lens. (*Id.* at 9). On November 8, 2016, Plaintiff was again seen by Dr. Rappaport because he was "seeing black spots again." (*Id.*). On December 1, 2016, Dr. Rappaport performed a third surgery on Plaintiff.[5] On April 15, 2017, Plaintiff submitted a sick call request complaining of

---

[4] Nurse Jane Doe is not a defendant.

[5] Plaintiff does not indicate whether he was placed in observation or given post-operative pain medication after his third surgery.

eye pain and an eye rash. On May 12, 2017, Plaintiff visited an eye specialist who opined that the surgeries performed by Dr. Rappaport were unsuccessful due to an error that occurred during the first surgery. (*Id.* at 10). On August 29, 2017, Dr. Rappaport told Plaintiff that further surgery could aggravate the condition, and therefore he would not perform additional surgeries. Plaintiff's amended complaint seeks compensatory and punitive damages and "any other relief this court deems just." (*Id.* at 11).

## II.   Standard

Because Plaintiff was a prisoner when he filed this action and is proceeding *in forma pauperis*, the court is required to review his amended complaint, identify cognizable claims and dismiss the amended complaint, or any portion thereof, if the amended complaint "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(a)-(b); *see also* 28 U.S.C. § 1915(e)(2)(B) (applying the same standard to *in forma pauperis* proceedings). Dismissals for failure to state a claim are governed by the Rule 12(b)(6) standard. *See* Fed. R. Civ. P. 12(b)(6); *Mitchell v. Farcass*, 112 F.3d 1483, 1485 (11th Cir. 1997). The court accepts all well-pleaded factual allegations of the complaint as true and evaluates all reasonable inferences derived from those facts in the light most favorable to the plaintiff. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. The mere possibility that the defendant acted unlawfully is insufficient. *Id.*; *see also* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"). The complaint's factual allegations "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965; *see also Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (reiterating that although Rule 8 of the Federal Rules of Civil Procedure does not require detailed factual allegations, it demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). A complaint may also be dismissed for failure to state a claim "when its allegations, on their face, show that an affirmative defense bars recovery on the claim." *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003); *see also Marsh v. Butler Cty., Ala.*, 268 F.3d 1014, 1022 (11th Cir. 2001); *Jones v. Bock*, 549 U.S. 199, 215, 127 S. Ct. 910, 920-21 (2007) (reiterating that principle).

**III.   Discussion**

"The treatment a prisoner receives in prison and the conditions under which he is confined" is governed by the Eighth Amendment to the United States Constitution. *Farrow v. West*, 320 F.3d 1235, 1242 (11th Cir. 2003) (citing *Helling v. McKinney*, 509 U.S. 25, 31, 113 S. Ct. 2475, 2480 (1993)). The Eighth Amendment prohibits infliction of "cruel and unusual punishments." U.S. CONST. amend. VIII. Under the Eighth Amendment, "when the State takes a person into custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *Helling*, 509 U.S. at 32, 113 S. Ct. at 2480 (quoting *DeShaney v. Winnebago Cty. Dep't of Soc. Serv.*, 489 U.S. 189, 199-200, 109 S. Ct. 998, 1005-06 (1989)).

The Supreme Court has held that a "prison official's 'deliberate indifference to the serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.'" *Farrow*, 320 F.3d at 1243 (quoting *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 291 (1976) (quotation marks and citations omitted)). In other words, because an inmate "must rely on prison authorities to treat his medical needs," prisons officials have an "obligation to provide medical care" for inmates, and failure to meet that obligation can constitute a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 103, 97 S. Ct. at 290; *see West v. Atkins*, 487 U.S. 42, 56, 108 S. Ct. 2250, 2259 (1988) (noting that a state has "an affirmative obligation to provide adequate medical care" to prisoners). But "not every claim by a

prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Farrow*, 320 F.3d at 1243 (quoting *McElligott v. Foley*, 182 F.3d 1248, 1254 (11th Cir. 1999) (citation omitted)).

To prevail on an Eighth Amendment claim of deliberate indifference to a serious medical need, a plaintiff must show:

(1) he had a serious medical need;

(2) the defendant was deliberately indifferent to that need; and

(3) there is a causal connection between the defendant's act or omission and the constitutional deprivation.

*Melton v. Abston*, 841 F.3d 1207, 1220 (11th Cir. 2016); *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009); *Rodriguez v. Sec'y, Dep't of Corr.*, 508 F.3d 611, 625 (11th Cir. 2007); *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000). This standard includes an objective component—"that the deprivation was serious enough to constitute cruel and unusual punishment"—and a subjective component—deliberate indifference. *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012) *overruled on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014); *Taylor*, 221 F.3d at 1257. Thus, courts "considering a prisoner's claim must ask both if 'the officials act[ed] with a sufficiently culpable state of mind' and if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Hudson v. McMillian*, 503 U.S. 1, 8, 112 S. Ct. 995, 999 (1992) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 303, 111 S. Ct. 2321, 2324, 2326 (1991)).

### A. The Existence of a Serious Medical Need

Because "society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson*, 503 U.S. at 9, 112 S. Ct. at 1000 (quoting *Estelle*, 429 U.S. at 103-04, 97 S. Ct. at 290-91). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow*, 320 F.3d at 1243 (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994)); *Keohane v. Fla. Dep't of Corr.*, 952 F.3d 1257, 1266 (11th Cir. 2020). In either of those cases, the medical need is serious if it is "one that, if left unattended, 'pos[es] a substantial risk of harm.'" *Farrow*, 320 F.3d at 1243 (quoting *Taylor*, 221 F.3d at 1258); *Keohane*, 952 F.3d at 1266.

Several courts have determined that a detached retina can constitute a serious medical need. *See e.g.*, *Hanson v. Blaine Cty.*, No. 1:16-cv-00421-BLW, 2018 WL 3370526, at *5 (D. Idaho July 9, 2018); *Herrera-Cubias v. Fox*, No. 08-CV-0517-TUC-AWT, 2012 WL 12539503, at *4 (D. Ariz. Sept. 10, 2012); *Trevino v. Browne*, No. 08-21017-Civ, 2010 WL 1248853, at *7 (S.D. Fla. Jan. 28, 2010). Additionally, courts have concluded that the need for post-operative care and pain management can be a serious medical need. *See e.g.*, *Majors v. Baldwin*, 456 F. App'x 616, 617

(8th Cir. 2012); *Hanson*, 2018 WL 3370526, at *5. Therefore, this court will assume that Plaintiff sufficiently alleged the existence of a serious medical need.

### B.     Deliberate Indifference

To state a claim for a violation of the Eighth Amendment, a plaintiff must set forth sufficient facts indicating that a defendant was deliberately indifferent to the plaintiff's serious medical need. *Hudson*, 503 U.S. at 5, 112 S. Ct. at 998; *Estelle*, 429 U.S. at 104, 97 S. Ct. 291; *Burley v. Upton*, 257 F. App'x 207, 210 (11th Cir. 2007); *Taylor*, 221 F.3d at 1258. Prisoners bringing "a deliberate-indifference claim [have] a steep hill to climb." *Keohane*, 952 F.3d at 1266.

Deliberate indifference is a higher standard than simple negligence and entails three components: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *Farrow*, 320 F.3d at 1245 (citing *McElligott*, 182 F.3d at 1255); *Goodman v. Kimbrough*, 718 F.3d 1325, 1331-32 (11th Cir. 2013). "Conduct that is more than mere negligence includes: (1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all." *Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011) (citing *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004)); *see also Farmer v. Brennan*, 511 U.S. 824, 839, 114 S. Ct. 1980 (1994) (defining deliberate indifference as conduct that is reckless; that evinces a knowing, conscious disregard). "An official disregards a serious risk by more than mere negligence 'when he or she knows that an inmate

is in serious need of medical care, but he or she fails or refuses to obtain [or intentionally delays] medical treatment for the inmate.'" *Nam Dang v. Sheriff, Seminole Cty. Fla.*, 871 F.3d 1272, 1280 (11th Cir. 2017) (citations omitted).

A complete denial of readily available treatment for a serious medical condition constitutes deliberate indifference. *Harris v. Coweta*, 21 F.3d 388, 393 (11th Cir. 1994). But "where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Harris v. Thigpen*, 941 F.2d 1495, 1507 (11th Cir. 1991) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)). Indeed, the Constitution does not "require that the medical care provided to prisoners be 'perfect, the best obtainable or even very good.'" *Keohane*, 952 F.3d at 1266 (quoting *Harris*, 941 F.2d at 1510).

An allegation that a prisoner did not get his preferred treatment or a treatment that was most pleasing to him is not sufficient to state an Eighth Amendment claim. *Keohane*, 952 F.3d at 1277. "The law is clear that where two alternative courses of medical treatment exist, and both alleviate negative effects within the boundaries of modern medicine, it is not the place of [a reviewing] court to second guess medical judgments or to require that [prison officials] adopt the more compassionate of two adequate options." *Id.* (quoting *Kosilek v. Spencer*, 774 F.3d 63, 90 (1st Cir. 2014) (en banc)); *Harris*, 941 F.2d at 1505; *Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1575

(11th Cir. 1985) (holding that when an inmate receives medical treatment but desires a different mode of treatment, the care provided does not amount to deliberate indifference). Thus, when an inmate has, in fact, received medical treatment, there will be a violation of the Eighth Amendment, only when the treatment was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Harris*, 941 F.2d at 1507 (quoting *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986)). An inadvertent failure to provide adequate medical care, negligence, or a difference of opinion over proper medical treatment, all are insufficient to constitute an Eighth Amendment violation. *Whitley v. Albers*, 475 U.S. 312, 319, 106 S. Ct. 1078, 1084 (1986) (noting that deliberate indifference requires "obduracy and wantonness" not "inadvertence or error in good faith"); *Estelle*, 429 U.S. at 105-07; *Mann*, 588 F.3d at 1307.

### 1. *Dr. Rappaport*

Plaintiff states that "[t]he actions of Defendant Rappaport . . . was [sic] so grossly inadequate/contrary to accepted medical practices as to constitute deliberate indifference to Plaintiff's serious medical needs causing Plaintiff a lot of unnecessary pain and suffering." (Doc. 20 at 11). Specifically, Plaintiff claims Dr. Rappaport performed the first surgery incorrectly, and the second and third surgeries failed to correct Plaintiff's condition. Plaintiff alleges that another physician opined that Dr. Rappaport "should not have cut Plaintiff twice because Defendant Rappaport screwed up the first surgery." (*Id.* at 10).

Taking Plaintiff's allegations as true, Plaintiff has not alleged facts that would constitute deliberate indifference. Rather, at best he has alleged negligence, which is plainly insufficient to state a claim under the Eighth Amendment. Even if Defendant's course of treatment was somehow deficient, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106, 97 S. Ct. at 292; *Harris*, 941 F.2d at 1505 ("Mere incidents of negligence or malpractice do not rise to the level of constitutional violations."). Because Plaintiff at best has alleged medical malpractice, Plaintiff's claims against Dr. Rappaport should be dismissed for failure to state a claim upon which relief can be granted.[6]

### 2. *Dr. John Doe and Nurse Arenela*

Plaintiff's claims against Dr. John Doe and Nurse Arenela consists of three sentences:

---

[6] Plaintiff has also failed to state a cognizable claim against Dr. Rappaport in a second respect: he has not alleged state action. Plaintiff alleges that Dr. Rappaport is a "self-employed" eye retinal specialist who practices in Jacksonville, Florida. "To prevail in a § 1983 suit, a plaintiff must show that the defendant is a state actor." *Higdon v. Smith*, 565 F. App'x 791, 792 (11th Cir. 2014) (citing *Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001)). "A private party is only considered a state actor in the 'rare circumstances' that the private party meets one of the three recognized tests: the State compulsion test, the public function test, or the nexus/joint action test." *Id.* Plaintiff has not alleged any factual allegations that the circumstances satisfy one of the three tests to transform Dr. Rappaport into a state actor.

> 15. On July 22, 2016, Plaintiff returned to RMC, he was seen in urgent care by Defendant Arenela, LPN at 21:30 hours and cleared by Defendant John Doe, M.D.
>
> 16. Plaintiff was then ordered by Defendants Arenela, LPN and Dr. John Doe to go to a holding cell called the patio.
>
> *   *   *
>
> 47. The defendants Arenela, LPN and Dr. John Doe Exhibited deliberate indifference to Plaintiff's serious medical needs, when despite their knowledge of Plaintiff's need for post-operative medical treatment, denied and refused to provide Plaintiff with prescribed post-operative care and medications, causing Plaintiff unnecessary pain and suffering.

(Doc. 20 at 7, 11-12).

These three sentences are the only allegations Plaintiff makes regarding Dr. John Doe and Arenela. Plaintiff's conclusory allegations about Dr. Doe and Arenela's knowledge are insufficient to state a claim for relief as to the "deliberate indifference" element of an Eighth Amendment claim. Specifically, Plaintiff does not state how these two Defendants: (1) knew that Plaintiff needed the unspecified post-operative medical treatment; (2) knew that he was prescribed the unnamed medications; and (3) knew that he was or would be in pain if he failed to receive this treatment/medication. Plaintiff's recitation of the events does not include an allegation that Plaintiff ever complained of pain directly to Arenela and Dr. Doe despite being "seen" and "cleared" by the Defendants. He also does not allege that anyone else informed these Defendants of his pain. These omissions are fatal to this claim. *See Keohane*, 952 F.3d at 1266 (An inmate must show that prison officials

acted with deliberate indifference by showing "that they had 'subjective knowledge of a risk of serious harm' and . . . that they 'disregard[ed]' that risk.") (emphasis added) (quoting *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004)); *see Majors*, 456 F. App'x at 617 (Plaintiff "failed to state a section 1983 claim as to the named defendants because he did not allege that any of them actually knew of the failure to treat his pain, and he did not identify anyone responsible for the delay in his treatment.").

Furthermore, Plaintiff does not specify what treatment and medications these Defendants allegedly denied Plaintiff, and he does not specify who prescribed the unstated "post-operative" treatment that he allegedly should have received. He also does not specify how he knows that failure to receive the unnamed medication and treatment resulted in additional pain and suffering that he otherwise would have avoided. Mere legal conclusions are insufficient to state a claim upon which relief can be granted. *Iqbal*, 556 U.S. at 678-79, 129 S. Ct. at 1949-50.

Additionally, according to Plaintiff's amended complaint, he was "seen" by Arenela and "cleared" by Dr. Doe. This suggests an exercise of medical judgment on the part of Arenela and Dr. Doe. "[A] simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment [cannot] support a claim of cruel and unusual punishment." *Keohane*, 952 F.3d at 1274 (quoting *Harris*, 941 F.2d at 1505); *Lamb v. Norwood*, 899 F.3d 1159, 1162 (10th Cir. 2018) ("We have consistently held that prison

officials do not act with deliberate indifference when they provide medical treatment even if it is subpar or different from what the inmate wants."). Plaintiff's disagreement with Defendants course of treatment as to whether he should have been medically "cleared" fails to state a claim for deliberate indifference to a serious medical need.[7]

According to the amended complaint, after Defendants cleared Plaintiff to be taken to a holding cell, they had no further interaction with him. Although Plaintiff alleges that he later told Nurse Jane Doe and several officers that he was experiencing post-operative pain and wanted pain medication, none of these individuals are Defendants in this action. For a claim of deliberate indifference, each Defendant must have participated in the deliberate indifference in some manner. "[I]mputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference . . . [e]ach individual Defendant must be judged separately and on the basis of what that person knows." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008) (citing *Gray v. City of Detroit*, 399 F.3d 612, 616 (6th Cir. 2005) ("[T]he test for deliberate indifference is a subjective test not an objective test for collective

---

[7] Furthermore, even if Dr. John Doe's decision to "clear" plaintiff was deficient, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106, 97 S. Ct. at 292; *Harris*, 941 F.2d at 1505 ("Mere incidents of negligence or malpractice do not rise to the level of constitutional violations.").

knowledge.") & *Whiting v. Marathon Cty. Sheriff's Dep't*, 382 F.3d 700, 704 (7th Cir. 2004) ("*Farmer*, since it requires the defendant-official to have actual knowledge of the risk, foreclosed imputed knowledge as the basis for an Eighth Amendment claim of deliberate indifference.")). Taken in the light most favorable to Plaintiff, the facts do not indicate that Arenela and Dr. John Doe were deliberately indifferent to Plaintiff's medical needs.

## IV. Conclusion

For the reasons set forth above, the undersigned respectfully **RECOMMENDS**:

1. Plaintiff's claims be **DISMISSED** with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim upon which relief may be granted.

2. The clerk of the court close the case file.

At Panama City, Florida this 29th day of April, 2020.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## **NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.